IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMANUEL DELEON FIELDS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-06-CV-0236-N |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Emanuel Deleon Fields, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was convicted of three aggravated robberies and sentenced to 60 years confinement. His convictions and sentences were affirmed on direct appeal. *Fields v. State*, Nos. 05-02-01665-CR, 05-02-01666-CR & 05-02-01667-CR, 2004 WL 60765 (Tex. App.--Dallas, Jan. 14, 2004, pet. ref'd), *cert denied*, 125 S.Ct. 2929 (2005). Petitioner also filed separate applications for state post-conviction relief with respect to each conviction. The applications were denied without written order. *Ex parte Fields*, Nos. 61,187-02, 61,187-03 & 61,187-04 (Tex. Crim. App. Jan. 11, 2006). Petitioner then filed this action in federal district court.

II.

In three grounds for relief, petitioner contends that: (1) the prosecutor exercised his peremptory challenges in a discriminatory manner to exclude all eligible African-Americans from jury service; (2) he was denied his constitutional right to trial by a jury of his peers; and (3) he received ineffective assistance of counsel.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated

differently, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

Petitioner first contends that the prosecutor used five of his 10 peremptory challenges to exclude all eligible African-Americans from jury service in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

1.

The Fourteenth Amendment guarantees every defendant in a criminal case equal protection under the law. *Hernandez v. Texas*, 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). This right extends to the jury selection process. *Swain v. Alabama*, 380 U.S. 202, 204, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 305-08, 25 L.Ed. 664 (1879). Thus, a prosecutor may not use his allotted peremptory challenges to exclude potential jurors solely on the basis of their race. *Swain*, 85 S.Ct. at 837-38. Prior to the *Batson* decision in 1986, the use of peremptory strikes against minorities in any single case was not unconstitutional.

*Id.* at 836-37. Rather, a defendant was required to demonstrate a historical pattern of racial bias in the selection of juries. *Id.* at 837-38. The Fifth Circuit explained this burden as follows:

> In order to prevail [on a *Swain* claim], [petitioner] must prove that his prosecutor had a systematic and intentional practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated through petitioner's trial.

*Evans v. Cabana*, 821 F.2d 1065, 1068 (5th Cir.), *cert. denied*, 108 S.Ct. 5 (1987), *citing Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir. 1983), *cert. denied,* 104 S.Ct. 3548 (1984). Absent evidence of purposeful and systematic discrimination, the prosecutor was entitled to a presumption that he used his peremptory strikes in a proper manner. *Swain*, 85 S.Ct. at 837.

The Supreme Court revisited *Swain* two decades later in *Batson*. Recognizing that it is often impossible for a defendant to prove the systematic exclusion of minorities from jury service over an extended period of time, the Court rejected this evidentiary formulation "as inconsistent with standards that have been developed since *Swain* for assessing a prima facie case under the Equal Protection Clause." *Batson*, 106 S.Ct. at 1721.[1] No longer were defendants required to establish a historical pattern of discrimination in the use of peremptory strikes. Under *Batson*, "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*." *Id.* at 1722 (emphasis in original).

A proper *Batson* challenge has three elements. First, the defendant must raise an inference that the prosecutor excluded potential jurors on the basis of race. *Id.* at 1723; *United States v. Wallace,* 32 F.3d 921, 925 (5th Cir. 1994). A defendant may satisfy this burden in a variety of ways, such as by showing a pattern of strikes against minority jurors on the venire panel or by statements

---

[1] The Supreme Court observed that the "crippling burden" imposed by *Swain* rendered the prosecution's use of peremptory challenges "largely immune from constitutional scrutiny." *Batson*, 106 S.Ct. at 1721.

made by the prosecutor during the voir dire examination. *Batson*, 106 S.Ct. at 1723. Once the defendant makes a prima facie showing of the discriminatory use of peremptory challenges, the burden shifts to the prosecution to articulate a race-neutral explanation for each of the challenged strikes. *Id.* at 1723-24; *Wallace*, 32 F.3d at 925. This inquiry focuses on the facial validity of the explanation given by the prosecutor for striking minority jurors. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (citations omitted); *see also United States v. Perkins,* 105 F.3d 976, 978 (5th Cir. 1997).

The final step of the *Batson* analysis requires the trial court to determine whether the defendant has proved purposeful discrimination. *Batson,* 106 S.Ct. at 1724; *Wallace,* 32 F.3d at 925. "When the record contains an explanation for the prosecutor's use of peremptory challenges, the reviewing court need only decide the propriety of the ultimate finding of discrimination." *Simmons v. Cockrell*, No. 3-02-CV-1774-M, 2003 WL 193442 at *3 (N.D. Tex. Jan. 24, 2003) (Kaplan, J.) (citing cases). A finding by the state court that the prosecutor exercised his peremptory challenges without any discriminatory intent is accorded great deference because it largely turns on an evaluation of the credibility or demeanor of the attorney who exercised the challenge. *See Hernandez v. New York,* 500 U.S. 352, 363, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *United States v. Bentley-Smith,* 2 F.3d 1368, 1373 (5th Cir. 1993). Such a finding will not be disturbed on federal habeas review unless it is "objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1028 (2006), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1209, 1041, 154 L.Ed.2d 931 (2003) ("*Miller-El I*"). *See also Rice v. Collins*, ___ U.S. ___, 126 S.Ct. 969, 976, 163 L.Ed.2d 824 (2006) ("Reasonable minds reviewing the record might disagree about the

prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

2.

Petitioner, an African-American, was charged with three aggravated robberies. All three cases were tried to the same jury in a consolidated proceeding. The original venire consisted of 70 prospective jurors. One member of the panel was struck for cause and 17 others were excused by agreement of the parties. Of the remaining 52 jurors, five were African-American. After the lawyers submitted their strike lists, the trial judge observed that the prosecutor had used five peremptory challenges against all the African-Americans on the jury panel. (SF-II at 132). Defense counsel then made a *Batson* objection. (*Id*. at 132-33). In response, the prosecutor offered specific reasons for striking each African-American juror. With respect to Juror No. 15, Cathy Green, the prosecutor explained:

> Ms. Green was the lady that was--actually had the son that had been convicted of an assault here in Dallas. That's one of the reasons why we struck her. I guess I could go through some of the other people that I struck, Number 30. She's a white lady who had a son that was convicted. We struck her. 14 is a white lady, Ms. Young, who actually had family members that were convicted of a crime. Actually, that was robbery. So we struck her.

(*Id.* at 133). Similar explanations were given for striking Juror No. 40, Darrell McAlpin, and Juror No. 49, Wanda Brigham, both of whom had family members who either had been convicted of a crime or were currently serving a prison sentence. (*Id.* at 137-38, 139). As an additional justification for striking Green, the prosecutor noted that she agreed with defense counsel when asked if a witness who stuttered might be lying. (*Id.* at 134-35). The prosecutor also pointed out that McAlpin failed to disclose his DWI conviction in response to a general question inquiring about prior arrests or criminal charges. (*Id.* at 138).

As grounds for striking Juror No. 22, Randy Williams, the prosecutor stated:

> He was pretty much a sight strike when he walked in. He had a big gold necklace around his neck, gold teeth. So he was more of a sight strike. The only other thing that he did say that I didn't like was he was asked directly by [defense counsel], so what are your thoughts on whether a person testifies or not? He didn't have any at all. He just didn't have any. I mean, you would think somebody would have one that I could follow that law, or I don't like that law, or I might rather they testify, but I can follow the law. So I don't know.
>
> * * * *
>
> And I don't know if he's just, again, another person that just wants to go along with [defense counsel] and do what he pleases and just say whatever [defense counsel] wants him to say. So those two reasons together was for that.

(*Id.* at 134-35).

Finally, the prosecutor explained that he struck Juror No. 24, Kent Peterson, because he fell asleep during the state's voir dire:

> I didn't appreciate that very much. He was the one I had to mention, Mr. Peterson, am I keeping you awake or whatever I mentioned to him, because he was falling asleep during mine.
>
> And, you know, I probably woke him up. But I also looked at-- watched him since he fell asleep during mine. And, of course, during [defense counsel's], he was, you know, bright-eyed and bushy-tailed. I don't know if I like that very much. But I may have woke him up by saying that to him.

(*Id.* at 136-37). In further support of his decision to strike this juror, the prosecutor referenced Peterson's belief that you should evaluate the accuser's credibility in a robbery case. (*Id.* at 137). According to the prosecutor, "I don't want [jurors] already being suspect of my victims." (*Id.*).

The trial judge then called upon petitioner, through his attorney, to rebut each of the race-neutral explanations proffered by the prosecutor. Defense counsel attempted to cast doubt on the reasons given for striking Green by arguing that she did not say her son had been treated unfairly

in his criminal trial, she was not personally involved in that proceeding, and she never said she could not be fair with respect to the facts of this case. (*Id.* at 139). Counsel protested that the peremptory challenge used against Williams was "more along the lines of a racial strike" because characteristics such as wearing a gold necklace and having gold teeth are more common among African-Americans and Hispanics. (*Id.* at 140). As for the prosecutor's reasons for striking Peterson, defense counsel noted that the state did not challenge Juror No. 35, Meri Haas, a white female, who also appeared to fall asleep during voir dire. (*Id.* at 141). The trial judge implicitly found that petitioner had established a prima facie *Batson* violation, but ultimately concluded that there was no evidence the prosecutor exercised any of his peremptory challenges in a racially discriminatory manner. (*Id.* at 141).[2]

On direct appeal, the state appellate court held that each of the explanations given by the prosecutor for striking Green, McAlpin, Brigham, and Peterson were race-neutral and facially valid. *Fields*, 2004 WL 60765 at *2-3, *citing Emerson v. State*, 851 S.W.2d 269, 272 (Tex. Crim. App. 1993) (familial association with relative convicted of criminal offense is race-neutral reason for exercising peremptory strike) *and Muhammad v. State*, 911 S.W.2d 823, 825 (Tex. App.--Texarkana 1995, no pet.) (same as to striking prospective juror who fell asleep during voir dire).[3] While acknowledging that three white venire members selected to sit on the jury had relatives who had been convicted of criminal offenses or had served time in prison, the appeals courts distinguished the African-Americans struck by the prosecutor on the basis that each had objectionable

---

[2] No argument was offered by defense counsel in response to the prosecutor's explanations for striking the other two African-American veniremembers, McAlpin and Brigham.

[3] Federal law is in accord. *See, e.g. United States v. Jimenez*, 77 F.3d 95, 101 (5th Cir. 1996) (conviction of close relative is race-neutral explanation for striking juror); *United States v. Hughes*, 970 F.2d 227, 231 (7th Cir. 1992) (same); *United States v. Casper*, 956 F.2d 416, 419 (3d Cir. 1992) (same); *United States v. Maserati*, 1 F.3d 330, 335-36 (5th Cir. 1993) (sleeping during voir dire is race-neutral explanation); *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990) (same).

characteristics not shared by their white counterparts. For example, Green agreed with defense counsel that a person may appear to be lying if he stuttered on the witness stand. McAlpin failed to disclose his prior DWI conviction. Brigham had a brother in prison "right now." Peterson said that he would consider the accuser's credibility in a robbery case. No white juror had similar characteristics. With respect to the alleged "racial strike" used against Williams, the appeals court noted that defense counsel failed to present any statistical evidence showing that African-Americans "have more gold teeth and gold chains" than any other group. *Id.* at *2. Because of these qualitative distinctions, the state court determined that the African-Americans struck by the prosecutor were not "similarly situated" to the whites who served on the jury. *Id.* at *2-3.

3.

Like most claims involving discriminatory jury selection practices, the critical issue in this case is whether the prosecutor's proffered race-neutral reasons for striking all eligible African-Americans from the jury can be believed. The ultimate conclusion of discriminatory intent is a question of fact. *See Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002). As the Fifth Circuit explained:

> We would tend to reverse if the State's reasons were fantastic or inconsistent with its treatment of similar non-minority jurors. Where its reasons are believable, however, the inquiry is one of credibility. Obviously, this question of fact turns heavily on demeanor and other issues not discernible from a cold record, such that deference to the trial court is highly warranted[.]

*Id.* (internal quotations and citations omitted). None of the arguments made by petitioner in his federal writ, all of which were raised and thoughtfully considered on direct appeal, convince this court that the state court finding on the ultimate issue of discriminatory intent is "objectively unreasonable." Even if the AEDPA standard of review did not apply, the court would have little

difficulty concluding that four of the African-American jurors struck by the prosecution-- Green, McAlpin, Brigham, and Peterson-- were not similarly situated to white jurors who shared some, but not all, of the same characteristics. *See Moore v. Keller Industries, Inc.*, 948 F.2d 199, 202 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1945 (1992) (where an attorney has multiple reasons for striking a minority juror, "the existence of other jurors with some of their individual characteristics does not demonstrate that the reasons assigned were pretextual"). The state court also properly rejected petitioner's claim involving Williams. Without evidence that African-Americans have more gold teeth and gold chains than any other group, petitioner cannot prove that the prosecutor struck Williams because of his race. *See, e.g. Purkett*, 115 S.Ct. at 1771 (allowing prosecutor to strike African-American juror because of his long, unkempt hair, mustache and beard, as such characteristics are not "peculiar to any race"); *United States v. Clemons*, 941 F.2d 321, 323 (5th Cir. 1991) (upholding strike of African-American juror because of his "modish dress"); *United States v. Claytor*, No. 7-05-CR-0007, 2005 WL 1745642 at *3 (W.D. Va. Jul. 26, 2005) (striking African-American juror who wore earrings was not improper where prosecutor explained that it "suggested to him that the prospective juror had made a life-style choice that was not consistent with mainstream society").

The court is mindful of the recent decision in *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("*Miller-El II*"), where a six-justice majority of the Supreme Court vacated a Dallas County capital murder conviction and death sentence because of a *Batson* violation. Although the prosecutors in both *Miller-El II* and petitioner's case used a disproportionate number of their alloted peremptory challenges to exclude eligible African-Americans from jury service,[4]

---

[4] One African-American, who was a vocal proponent of the death penalty, was not struck by either the prosecution or the defense and served on the *Miller-El* jury. *See Miller-El II*, 125 S.Ct. at 2325.

there are significant differences between the two cases. In *Miller-El II*, a side-by-side comparison of African-American jurors who were struck and white jurors who were not revealed that several of the jurors shared nearly identical characteristics but were treated differently. *Miller-El II*, 125 S.Ct. at 2319-20. By contrast, the African-American jurors struck by the prosecution in the instant case were not similarly situated to the white jurors who served. Moreover, the prosecutor in *Miller-El II* shuffled the jury panel two different times to obtain a more favorable array and posed contrasting questions about the death penalty to African-American and white jurors. *Id.* at 2322. No such evidence exists in this case.[5] Finally, and perhaps most significantly, the defendant in *Miller-El II* was tried in 1986--more than 15 years before petitioner. For decades preceding that trial, the Dallas County District Attorney's office had followed a policy of systematically excluding African-Americans from juries. *Id.* at 2321-22. While petitioner maintains that such discriminatory practices continue today, there is no evidence to support this speculative assertion.

In sum, petitioner has failed to prove by clear and convincing evidence that the prosecutor used any of his peremptory challenges in a racially discriminatory manner. This ground for relief should be overruled.

C.

Petitioner also contends that he was denied his "basic constitutional right" to trial by a jury of his peers. Apparently, petitioner believes that he is entitled to be tried by a jury comprised of at least some African-American members. Such is not the case. The equal protection clause of the Fourteenth Amendment prohibits only the exclusion of racial groups from the venire from which a jury is selected. *See Holland v. Illinois*, 493 U.S. 474, 478-79, 110 S.Ct. 803, 806, 107 S.Ct. 905

---

[5] The state court record shows that petitioner's attorney, not the prosecutor, filed a motion to shuffle the jury panel. (St. App. Tr. at 37). However, there is no evidence that the motion was granted.

(1990), *citing Strauder*, 100 U.S. at 305. There is no corresponding constitutional right to a trial by members of a particular racial group. This ground for relief is without merit and should be overruled.

D.

In his final ground for relief, petitioner alleges that he received ineffective assistance of counsel because his attorney failed to object to certain questions posed by the trial judge and the prosecutor's closing argument during the punishment phase of his trial. Petitioner also complains that counsel should have objected to the charge submitted to the jury on guilt-innocence because it was not signed by the judge.[6]

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must establish prejudice. *See id.* at 2067. Where ineffective assistance of counsel is alleged during the punishment phase of a non-capital case, the petitioner must demonstrate that the sentence he received would have been

---

[6] Each of the alleged errors made the basis of petitioner's ineffective assistance of counsel claim were raised on direct appeal. However, the state court declined to review any of those claims, except for fundamental error, because counsel did not object at trial. *See Fields*, 2004 WL 60765 at *2-3.

"significantly less harsh" but for the deficient performance of his attorney.[7] *Daniel v. Cockrell*, 283 F.3d 697, 706 (5th Cir.), *cert. denied*, 123 S.Ct. 286 (2002), *citing Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). In making this determination, the court must consider: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law; (3) the placement of the sentence within the allowable range; and (4) any mitigating or aggravating factors considered by the trier of fact. *Spriggs*, 993 F.2d at 88-89.

2.

After the jury convicted petitioner of aggravated robbery, the same jury heard evidence on punishment. Two witnesses testified at the hearing. One witness was Richard Hamb, a fingerprint expert employed by the Dallas County Sheriff's Department, who authenticated records showing that petitioner had previously pled guilty to aggravated assault with a deadly weapon and had been placed on deferred adjudication probation. (SF-III at 179-82). The other witness was Ester Johnson, petitioner's great-great aunt. Johnson asked the jury for leniency so that petitioner could have a chance to rehabilitate himself and turn around his life. (*Id.* at 186). On cross-examination, Johnson acknowledged that petitioner had been on probation for "shooting someone." (*Id.* at 187). The trial judge then inquired, "Do you know the person Emanuel was placed on probation for shooting?" (*Id.* at 188). Johnson said she did not know the person, but was familiar with his reputation. (*Id.*). Defense counsel did not object to the judge's question. Instead, counsel made clear on redirect

---

[7] In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines. *Id.* at 438. *See also Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance"). However, the court noted an important distinction between the federal guidelines and state sentencing regimes. Because state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence." *Grammas*, 376 F.3d at 438 n.4, *quoting Spriggs*, 993 F.2d at 88. Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal guidelines. *Id. See also Doria v. Dretke*, No. A-03-CA-693-LY, 2006 WL 1348386 at *11 n.5 (W.D. Tex. May 4, 2006); *Wadhwa v. Dretke*, No. 3-04-CV-1687-G, 2005 WL 1521846 at *2 n.1 (N.D. Tex. Jun. 27, 2005) (Kaplan, J.), *rec. adopted as modified*, 2005 WL 1679440 (N.D. Tex. Jul. 18, 2005).

examination that petitioner had been placed on probation and had not been convicted of a felony. (*Id.* at 188-89).

Petitioner now contends that the question posed by the trial judge showed bias and faults his attorney for failing to object on that ground. In rejecting this argument on direct appeal, the state court wrote:

> [T]here is nothing to suggest the trial judge did not maintain an impartial attitude when asking the question. The judge did not suggest the answer or otherwise indicate how the witness should testify. Under these circumstances, we fail to see how the trial judge's question resulted in fundamental error.

*Fields*, 2004 WL 60765 at *4. Even had counsel objected to the judge's question and preserved this issue for appellate review under a more liberal standard, there is nothing to suggest that the outcome would have been any different. Under Texas law, a trial judge is permitted to question a witness provided the judge maintains an impartial attitude. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978). There was nothing improper about the judge asking Johnson if she knew the person petitioner was accused of shooting, especially in light of the fact that Johnson had just testified that she was familiar with the victim's reputation. Consequently, counsel was not required to object to the judge's question. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.), *cert. denied*, 115 S.Ct. 432 (1994) (counsel not required to make futile objections).

Nor has petitioner established that he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's closing argument on punishment. In asking the jury to assess a significant prison sentence, the prosecutor remarked:

> Who is Mr. Fields? Well, we know from what we proved up is that he was on probation for shooting a guy *in the back*-- or he got probation in 2000 for shooting a guy *in the back*. You can take that into consideration.

(SF-III at 192) (emphases added). Petitioner correctly notes that there is no evidence he ever shot anyone in the back and, perhaps, his attorney should have objected to the prosecutor's statement. However, petitioner cannot demonstrate that he would have received a significantly less harsh sentence had counsel made such an objection. The evidence adduced at trial shows that petitioner and two accomplices robbed three people at gunpoint. One accomplice shot at the victims while running from the scene. Petitioner attempted to escape by getting into the car of a woman and her young son, thus putting innocent lives at risk. The jury also heard evidence that petitioner had pled guilty to a prior charge of aggravated assault with a deadly weapon. In light of the overwhelming evidence of guilt and petitioner's prior criminal record, the court cannot say that the 60-year prison term assessed by the jury was due, even in part, to the prosecutor's isolated remark that petitioner shot someone in the back.

Finally, petitioner criticizes his attorney for failing to object to the jury charge on guilt-innocence because it was not signed by the judge. Once again, even if counsel should have objected to the charge on this ground, his failure to do so does not rise to the level of a constitutional violation. Petitioner does not argue that the jury charge was defective in any substantive respect. His only complaint is that the charge was unsigned. Had counsel made such an objection at trial, the judge likely would have signed the charge and given the same instructions to the jury. Under these circumstances, petitioner cannot show prejudice.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file

written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 6, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE